

NUMBER 13-11-00778-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOE DAVID LUNA,                                                                          Appellant,

v.

THE STATE OF TEXAS,                                                                     Appellee.

### On appeal from the 36th District Court
### of San Patricio County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Longoria
### Memorandum Opinion by Justice Benavides

Appellant, Joe David Luna, appeals his conviction for two counts of aggravated

assault, a second-degree felony, *see* TEX. PENAL CODE ANN. § 22.02(a) (West 2011), and

two counts of engaging in organized criminal activity, a first-degree felony. *See id.* §

71.01 (West 2011). By three issues, Luna asserts that (1) the non-accomplice witness

evidence insufficiently connects him to the alleged offenses; (2) insufficient evidence

exists for him to be convicted as a party to the alleged offenses; and (3) the trial court committed charge error by (a) failing to provide the jury with an accomplice-witness instruction and (b) providing erroneous application paragraphs.  We affirm.

## I. BACKGROUND

Luna and other individuals were indicted on two counts (Counts 1–2) of aggravated assault and two counts (Counts 3–4) of engaging in organized criminal activity related to a shooting in Taft, Texas.  Luna pleaded "not guilty" as to Counts 1 and 2 and "no contest" as to Counts 3 and 4.  The State tried Luna alongside his co-defendant Leonard Garcia before a San Patricio County jury, and presented the following evidence at trial.

On April 29, 2011, police were dispatched to a call of "shots fired" at a home on the 500 block of Dolores Street in Taft, Texas.  Taft Police Officer Jeremiah Smith arrived first on the scene and made contact with two shooting victims, Robert Franco and Steven Rivera.  According to Officer Smith, Robert had "blood all over," and people around him "[tried] to keep pressure on his leg," while Steven was "fading out a little bit," and his "lips turned blue."  As emergency workers treated Steven at the scene, he identified several shooting suspects for Officer Smith, including:  (1) Luna, (2) Garcia, (3) Rodolfo Salazar, and (4) Jose Jimenez.

Robert and Steven each testified.  Robert stated that he was at Steven's house on April 29, 2011 when he "got shot four times in the legs" by someone wielding a handgun and then "fell to the ground."  As a result, Robert was hospitalized for four days.  Robert told the jury that he does not know who shot him nor does he know Luna or Garcia, but that he does know Jimenez from time they spent together in prison.

2

Steven stated that he was in the front yard/porch area of his home when three vehicles drove up to his house and Jimenez, Luna, Garcia, and Ruben Treviño exited. Steven testified that Luna then opened fire at him after Jimenez and Luna each asked him "who is Steve?" Steven said that when the first shot hit him, he felt like his "leg was blown off." Steven indicated that Luna fired either a .45 caliber or 9-millimeter silver handgun that day. When pressed on cross-examination, Steven testified that he was "one-hundred percent sure" that Luna shot him. Steven also admitted that at one point, he was a "prospect" with the Raza Unida prison gang, but did not become a full-fledged member and stopped affiliating with them because he "no longer wanted to carry out their orders." Steven stated that he was hospitalized following the shooting and underwent "several" surgeries to recover.

Kimberly Rivera, Steven's sister, also testified. Kimberly stated that she drove up to the Dolores Street home on the evening of April 29, 2011 and witnessed "a bunch of guys," including Luna, "leaving in trucks, SUVs, and cars." Kimberly testified that the men were running as if they wanted to leave and "get out of there." Kimberly stated that she did not stop at the house as planned, and, instead, left out of fear. The State also called witness Ray Lopez III. Lopez testified that he lived directly across the street from Steven's house. Lopez stated that he saw "five or six guys" drive up to Steven's house on April 29, 2011, before he heard gunfire. While Lopez could not identify any of the shooters, he remembered seeing a nickel-plated gun and described one individual involved as "young" with a light complexion.

Luna's co-conspirator Jimenez also testified. Jimenez, who was incarcerated at the time of trial, admitted that he was a member of Raza Unida along with Luna and

3

Garcia. According to Jimenez, Luna proposed the idea of attacking Steven because Steven sold drugs in Taft and refused to pay "taxes . . . to the gang . . . ."[1] Jimenez stated that all the firearms used in the attack belonged to Luna, and that it was Luna's idea to "take care of business" and "basically . . . kill them."

Jimenez testified that the group descended on the Dolores Street residence in the early evening hours of April 29, 2011 in three separate vehicles. Jimenez used a 9-millimeter firearm, while Luna used a .357 caliber weapon. Jimenez stated that he shot Franco one time, "probably in the thigh," and then returned to his car and drove away. Prior to leaving the scene, Jimenez recalled seeing Luna fire his weapon. Jimenez indicated that he abandoned his getaway vehicle later that night along a rural road and was picked up by another vehicle and transported to Corpus Christi, Texas to regroup with the others. The gang later rented rooms at a local Corpus Christi motel in order to hide out. Jimenez testified that once at the motel, Luna bragged about shooting Robert and Garcia stated that he shot Steven. Later that night, the group visited a local carnival and returned to the motel. Luna, Garcia, and Treviño were arrested the next day in Corpus Christi, while Jimenez was later captured in McAllen, Texas.

Co-conspirator Salvador Gonzalez also testified and corroborated much of Jimenez's testimony, including the plan to "tax" Steven and Robert for selling drugs in Taft. Gonzalez also stated that Garcia carried a "nickel-plated revolver" during the attack and that he believed that Luna shot Steven that evening. Gonzalez remembered

---

[1] Jimenez defined "taxes" as a certain percentage of drug proceeds that were owed to Raza Unida for selling drugs in Taft.

4

that Garcia and Luna joked later that evening in Corpus Christi about who shot Steven first.

The State also called witness Lindsay Ann Gonzales. Gonzales testified that she was acquainted with Luna prior to April 29, 2011 and that Luna—along with Garcia and another unidentified male—arrived in Corpus Christi at 8 p.m. on April 29, 2011 driving a gold-colored sports utility vehicle. Gonzales admitted that she rented a Corpus Christi-area motel room later that night for Luna, at Luna's request, and with Luna's money.

Finally, the State called Investigator Isaac Leal of the San Patricio Sheriff's Department. Investigator Leal stated that one of his duties with the sheriff's department is to maintain the county's "gang registry," which identifies and classifies known and suspected gang members around the county and the state. Investigator Leal testified about the history of the Raza Unida prison gang and its leadership structure. At the time of the shooting, Investigator Leal stated that Luna was the highest-ranking Raza Unida gang member [2] in Taft and that Garcia, Jimenez, and Gonzalez were subordinates. According to Investigator Leal, "nothing" could have been done without Luna's approval.

The jury found Luna guilty of each count as alleged in the indictment and assessed punishment at: (1) thirty years' imprisonment with a $5,000 fine for each aggravated assault charge (Counts 1 and 2); and seventy-five years' imprisonment with

---

[2] According to Investigator Leal, the title of "pano" is given to a city's highest ranking Raza Unida member.

a $10,000 fine for each engaging in organized criminal activity charge (Counts 3 and 4) to run concurrently.[3]   This appeal followed.

## II.   ACCOMPLICE WITNESS TESTIMONY

By his first issue, Luna asserts that the non-accomplice witness evidence insufficiently connects him to the alleged offenses.

### A.   Applicable Law and Standard of Review

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense.   TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005).   Stated another way, the test for weighing the sufficiency of corroborative evidence is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is evidence which tends to connect the accused with the commission of the offense.   *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997).   The corroborative evidence need not be sufficient in itself to establish guilt, nor must it directly link the accused to the commission of the offense. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (citing *Hernandez*, 939 S.W.2d at 176).   We view the evidence in the light most favorable to the jury's verdict. *Brown*, 270 S.W.3d at 567.

An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Brown*, 270 S.W.3d at 567; *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App.

---

[3] The jury made affirmative enhancement findings that Luna used or exhibited a deadly weapon during the commission of these offenses.

2004) (citing TEX. PENAL CODE ANN. § 7.02(a) (West 2011)). Here, the State does not dispute that Jimenez and Gonzalez are accomplices. Thus, for the conviction to rest upon Jimenez and Gonzalez's testimony, "there must simply be *some* non-accomplice evidence which *tends* to connect appellant to the commission of the offense alleged in the indictment." *Brown*, 270 S.W.3d at 567 (internal quotations omitted); *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (en banc).

## B.     Discussion

In this case, Steven identified Luna directly in his testimony at trial as one of the shooters and a participant to the offenses charged. More specifically, Steven stated that he was "one-hundred percent sure" that Luna was the individual who shot him while he ran away from the gunfire. Steven also described a silver gun that was used during the offense, which corroborates Gonzalez's testimony. Furthermore, Taft police officer Smith stated that Steven identified Luna while emergency workers treated him on the day of the shooting. Steven's sister, Kimberly, also testified that Luna was "running" from the Dolores Street house on the day of the shooting and fled in a vehicle along with the other accomplices. Finally, Lindsay Gonzales testified that Luna arrived in Corpus Christi along with other accomplices on the night of the shooting and rented a motel room for him because they "weren't going back home."

After eliminating accomplice witness testimony from our consideration and conducting an examination of the independent non-accomplice evidence, we conclude that such non-accomplice evidence tends to connect appellant to the offense sufficiently to corroborate the testimony of the accomplice witnesses. *See Brown*, 270 S.W.3d at 569. Luna's first issue is overruled.

7

### III.    SUFFICENCY CHALLENGE

By his second issue, Luna contends that insufficient evidence supports his conviction as a party to the aggravated assault offenses.

### A.    Standard of Review

When reviewing a defendant's sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (citing *Brooks v. State*, 323 S.W.3d 893, 902 (plurality op.)); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).    The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury.    *Montgomery*, 369 S.W.3d at 192.    Thus, our duty is "simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged."    *Id.* (internal citations omitted).    When faced with a record supporting contradicting inferences, we must presume that the jury resolved such conflicts in favor of the verdict, even if not explicitly stated in the record.    *Id.* (citing *Brooks*, 323 S.W.3d at 899 n.13).

The elements of the offense are measured as defined by a hypothetically correct jury charge.    *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).    Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was

tried. *Id.*

**B.      Discussion**

Here, the State alleged by two counts that Luna committed aggravated assaults against Robert and Steven.    Under a hypothetically correct jury charge, Luna is guilty of aggravated assault if he (1) intentionally, knowingly, or recklessly caused bodily injury to Robert and/or Steven and (a) caused serious bodily injury to Robert and/or Steven; or (b) used or exhibited a deadly weapon, to wit: a firearm during the commission of the assault.    *See* TEX. PENAL CODE ANN. §§ 22.01–.02.    At trial, the State argued two potential theories of liability:    (1) that Luna acted as the principal to both aggravated assaults; or (2) that he acted as a party to the offense.    *See* TEX. PENAL CODE ANN. § 7.01(a) (West 2011) ("a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both"); *see also id.* § 7.01(b) ("Each party to an offense may be charged with commission of the offense").

Luna specifically challenges the sufficiency of the evidence to convict him as a *party* to the aggravated assault offenses.    However, Steven directly testified that Luna opened fire on him and was "one-hundred percent sure" that Luna shot him.    Further, accomplice Gonzalez also testified that he believed that Luna shot Steven that day and that Luna and Garcia were joking about who shot Steven first.    While Robert could not identify who shot him on April 29, 2011, Jimenez testified that Luna bragged later that night at the Corpus Christi motel that he "shot [Robert] as many times as he could." Jimenez also testified that Luna wielded a gun that day and fired it after the gang arrived at the Dolores Street residence.

9

Jimenez also testified that it was Luna's idea to attack Steven and Robert that day because Steven sold drugs in Taft and refused to pay "taxes" to the Raza Unida prison gang. Gonzalez also testified that the gang met before the shooting in order to plan the attack against Steven and Robert. Jimenez stated that all of the guns used in the assault belonged to Luna. According to Jimenez and Gonzalez, the gang later met up at a predetermined location in Corpus Christi where Luna in particular discussed the shooting and the ramifications of death for anyone who showed "weakness" and told the authorities about what happened.

After viewing this evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found Luna guilty of both counts of aggravated assaults, under either of the State's theories of liability, beyond a reasonable doubt. We overrule Luna's second issue.

## IV. JURY CHARGE

By Luna's final issue, he contends that the trial court committed harmful jury charge error.

### A. Standard of Review

Our first duty in analyzing a jury-charge issue is to determine whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). If we find error, we analyze it for harm. *Id.* The degree of harm necessary for reversal depends on whether the error was preserved by objection. *Id.* If the error was preserved by objection, we will reverse if we find "some harm" to the defendant's rights. *Id.* If no objection was made, we will reverse only if the record shows "egregious harm" to the defendant. *Id.*

10

**B. Discussion**

Luna first argues that the trial court erred by not providing the jury with an accomplice witness instruction with regard to Jimenez and Gonzalez's respective testimonies.

If there exists no doubt or the evidence clearly shows that a witness is an accomplice as a matter of law then the trial court is under a duty to so instruct the jury. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007); *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998) (en banc); *see also Smith v. State*, 332 S.W.3d 425, 441 (Tex. Crim. App. 2011). Here, no doubt exists and the evidence clearly shows that Jimenez and Gonzalez are accomplices as a matter of law because they were both indicted along with Luna for the charged offense. Therefore, we conclude that the trial court erred by failing to instruct the jury under article 38.14. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. Because Luna failed to preserve error on this issue, he must show egregious harm. *See Ngo*, 175 S.W.3d at 743.

Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (en banc) (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991) (en banc)). The court in *Saunders* found error under this standard because the corroborating non-accomplice evidence was weak and was contradicted by other evidence. *See Saunders*, 817 S.W.2d at 693.

11

Unlike in *Saunders*, however, the corroborating non-accomplice evidence in this case is not weak, as outlined in Part II of this opinion, and contradicted only by two witnesses—Ramiro Rubio and Luna's brother, Jason Luna—who both testified that Luna was moving appliances with them on the evening of April 29, 2011. We defer to the jury as to the credibility of these witnesses and the weight to be given to their testimonies. *See Montgomery*, 369 S.W.3d at 192. Accordingly, we conclude that the trial court's error was harmless.

Next, Luna argues that the trial court erred by including the names of the other accomplices in the application paragraph of the jury charge. We agree. Under the law of parties, the State is able to enlarge a defendant's criminal responsibility to acts in which he may not be the primary actor. *Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996). However, if the defendant requests that the application paragraph of the jury charge refer *only* to those specific party-liability acts that are supported by the evidence, then he is entitled to such a narrowing. *Vasquez v. State*, 389 S.W.3d 361, 368 (Tex. Crim. App. 2012) (emphasis in original) (citing *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995)).

The following application paragraphs were submitted to the jury:

<u>COUNT 1</u>

Now, if you find from the evidence beyond a reasonable doubt that on or about April 29, 2011, in San Patricio County, Texas, [Jimenez], [Gonzalez], [Luna], [Garcia], [Treviño] and [Salazar], acting alone or together, did then and there intentionally, knowingly, or recklessly cause bodily injury to [Steven] by shooting [Steven] with a handgun, to wit a firearm, then you will find [Luna] guilty of Aggravated Assault as alleged in the indictment.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

12

Now, if you find from the evidence beyond a reasonable doubt that on or about April 29, 2011, in San Patricio County, Texas, [Jimenez], [Gonzalez], [Luna], [Garcia], [Treviño] and [Salazar], acting alone or together, did then and there intentionally, knowingly, or recklessly cause bodily injury to [Robert] by shooting [Robert] with a handgun, to wit a firearm, then you will find [Luna] guilty of Aggravated Assault as alleged in the indictment.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

At the trial court's charge conference, Luna objected to the application paragraphs on the grounds that it would confuse the jury to include all of the defendants' names as written. Luna requested that the charge only list his name in the application paragraph, or in the alternative, the following:

[Luna], acting alone or together with, [Jimenez, Gonzalez, Garcia, Treviño, and Salazar] . . . .

Under *Vasquez*, we conclude that the trial court erred by denying Luna's request to narrow the application paragraph, in order to prevent juror confusion on how to apply the abstract paragraph instruction on the law of the parties to the specific application paragraph of the charges alleged against Luna. Thus, because Luna properly preserved error on this issue, the error is reversible if the defendant has suffered actual harm to his rights. *See Vasquez*, 383 S.W.3d at 368 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (holding that "if the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than that there must be *some* harm to the accused from the error)).

We analyze for harm in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of

13

counsel, and any other relevant information revealed by the record of the trial as a whole. *Vasquez*, 389 S.W.3d at 368–69.

Luna's charge objection asserted that the application paragraph, as written, allowed the jury to convict him purely based upon the self-incriminating testimony of his accomplices, who admitted to planning, participating, and aiding in the commission of the aggravated assault. We disagree. Luna's argument ignores the amount of other evidence discussed in Parts II and III, which directly implicates Luna as one of the shooters and fully corroborates the accomplice's testimony offered by the State to connect Luna to the charged offenses. Furthermore, during closing arguments, the State's prosecutor paraphrased, explained, and clarified the law of parties and its application to the present case in the following manner:

> And if you believe [Jimenez] shot [Robert] and you believe [the defendants] aided, assisted, encouraged, solicited, promoted this activity in any way, then they're guilty, ladies and gentlemen, because that is the law of parties.
>
> You do not actually have to believe they fired the shot to find them guilty. However, I contend that both of them did, based on the evidence. Both of them did.
>
> But you don't have to believe that to find them guilty and that's what the law of parties talks about in the charge.

Luna's counsel, however, focused on inconsistencies in the evidence during her closing arguments and did not specifically address the law of parties except to say that Luna was not at the scene on Dolores Street when the crime took place. Finally, the verdict forms in this case name Luna as the only defendant to find guilty or not guilty for the charged offenses. We also agree with the trial court's comments during the charge conference that these verdict forms alleviated any concerns of confusion to the jury.

14

Accordingly, after reviewing the record, we conclude that Luna's rights were not harmed by the trial court's erroneous denial of his request to narrow the application paragraph of the jury charge.    Luna's final issue is overruled.

## V.    CONCLUSION

We affirm the trial court's judgments.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
9th day of May, 2013.